**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARSHALL E. STALKER,
Individually and on behalf of all
Others similarly situated,

            CASE NO.  10-11355
   Plaintiff,          HON. LAWRENCE P. ZATKOFF

v.

MBS DIRECT, LLC and
MBS TEXTBOOK EXCHANGE, INC.,

   Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 1, 2011

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
           UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) [dkt 11]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion to dismiss [dkt 11] is GRANTED IN PART and DENIED IN PART.

**II. BACKGROUND**

Defendant MBS Direct, LLC ("MBS Direct"), as a wholly owned subsidiary of MBS

Textbook Exchange, Inc. ("MBS Textbook") (collectively "Defendants"), operates the largest mail-order textbook business in the United States. Defendants serve more than 4,000 academic institutions nationwide and processes more than 12 million new and used textbooks annually. Plaintiff, on behalf of himself and a purported class of similarly situated individuals, alleges that Defendants employ deceptive sales practices to mislead customers—primarily students and their parents—into paying artificially inflated prices for textbooks.

## A. Plaintiff's Factual Allegations

### *1. Generally*

Defendants maintain a network of sales agents who solicit exclusive relationships with universities and parochial or non-public secondary schools across the country, in which the schools agree to direct their students to purchase textbooks from Defendants at artificially inflated prices in exchange for commissions from the sale of textbooks. Defendants typically accomplish this by entering into a contractual relationship with each of the schools, establishing Defendants as the "exclusive" provider. A typical contract states the following or similar language: "School agrees that [Defendants] will be exclusive course materials retailer . . . and will only give the list of required textbooks to [Defendants]". Defendants have entered into such contracts with over 600 schools, including, but not limited to, the following institutions located in Michigan: Central Michigan University, Eastern Michigan University, the University of Michigan, University Liggett School, Cranbrook Kingswood Schools, and Detroit Country Day. In many instances, the schools then close their on-campus book stores in support of the exclusive relationships.

The schools provide Defendants with a list of textbooks required for students' courses, and the schools then establish links on their websites that direct students to Defendants' website.

Students then enter their class information and are given a list of books assigned for those classes, which students may then purchase from Defendants. Plaintiff purchased textbooks from Defendants for his child, who attended University Liggett School, by following a link on the school's website as described above.

*2. Commissions to Schools*

As consideration for entering into the "exclusive" contracts and funneling their students to Defendants, Defendants offer the schools a negotiated percentage of the student purchases as an undisclosed commission, which Plaintiff refers to as a "kickback." If a school declines to receive a commission, textbooks are sold at a lower price to that school's students.

Neither Defendants nor the schools inform customers that the commissions, which range from 4-11% of the textbook sale prices, are being paid or that identical textbooks may be sold elsewhere at lower prices. Instead, statements on Defendants' website give the false impression that customers are receiving lower prices by utilizing Defendants to order textbooks. For instance, on the website page with the heading "The Advantages of MBS Direct", it states "MBS Direct relieves the burden, hidden costs and hassles of textbook fulfillment." It also claims in this same section that "Best of all, there are no start-up or hidden fees for our services." On the screen with the heading "Why Buy From MBS Direct?", one of the reasons provided is "Saving Money on Your Textbooks". It notes that "[t]he cost of textbooks has risen dramatically. Now more than ever, students need opportunities to save money." Defendants' website also lists certain frequently asked questions and answers. In response to the question "Can I save money by purchasing course materials directly from MBS Direct?" the answer is "Yes . . . used books, digital books (eBooks), Customer Loyalty program, and Guaranteed Buyback were all developed to save you the most money." Prior to 2009,

Defendants did not reveal any information on their website about the commissions. In 2009, Defendants amended their "Privacy Policy," which is located in the bottom corner of Defendants' website in small print. The Privacy Policy provides the following:

> On occasion, MBS Direct enters into agreements with educational institutions. Under such agreements, MBS Direct may provide services and other consideration to the educational institution, including, but not limited to, (i) providing students of the educational institution the opportunity to purchase books and other course materials from MBS Direct, (ii) providing the educational institution a commission, or other financial remuneration, based upon sales made to the educational institutions' students.

Plaintiff claims that the limited disclaimer is insufficient and misleading, as it merely states that Defendants *may* provide consideration or payment to the educational institutions, rather than stating that such consideration or payment *will* be paid. Further, Plaintiff claims this disclosure is located at the end of the "Privacy Policy", which is not where a consumer would normally look for this type of information, and it is not necessary for a customer to click on this link in order to purchase a book.

### 3. Concealment of ISBNs

The book selling industry utilizes 10-digit and 13-digit International Standard Book Numbers ("ISBNs") to identify each book by the proper edition. Booksellers, schools and students all typically use ISBNs to ensure that a student buys the correct edition of a book. According to Plaintiff, Defendants do not list ISBNs for books on their website in order to prevent students from comparison shopping at other booksellers.

### 4. Deceptive Practices for Used Book Sales and Purchases

In addition to selling new textbooks, Defendants also sell used textbooks. In fact, they claim to have the largest inventory of used books in the country. Defendants also pay schools that have

exclusive contracts with Defendants an undisclosed commission on used books, which inflates the used book prices for students. Defendants also misrepresent that they can repurchase students' used books at "top dollar" when, in fact, the value Defendants pay for used books at schools that have exclusive contracts is less than the amount they pay for the same books at other institutions that do not have exclusive contracts.

*5. Defendants' Affiliate Website*

Defendants also operate an affiliate website, www.textbooks.com, which offers the same textbooks but at significantly lower prices. In addition, www.textbooks.com offers free shipping on orders over $25.00, while Defendants' other website charges for shipping on all orders, regardless of price. Defendants do not inform students attending schools that have exclusive contracts with Defendants that their textbooks can be purchased on its affiliate website for lower prices.

**B. Claims/Defenses**

Plaintiff contends that, pursuant to the actions described above, Defendants (1) violated the Michigan Consumer Protection Act ("MCPA), Mich. Comp. Laws § 445.901 *et seq.*, (2) committed fraudulent misrepresentations and omissions, and (3) were unjustly enriched.

Defendants argue that Plaintiff's claims should be dismissed because (1) Plaintiff does not allege that he read and relied on Defendants' representations, (2) Defendants had no legal duty to disclose the fact that consumers could purchase less expensive books elsewhere, (3) the 4-11% commission is not grossly excessive under the MCPA, and (4) Plaintiff's unjust enrichment claim fails because the parties' dispute is governed by an express contract.[1]

---

[1]Defendants' motion only addresses Plaintiff's individual claims and does not discuss the class allegations.

### III. STANDARD OF REVIEW

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in the plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

### IV. ANALYSIS

**A. Counts I and II**

Plaintiff alleges five violations of the MCPA, which prohibits "[u]nfair, unconscionable, or

6

deceptive methods, acts, or practices in the conduct of trade or commerce" defined as follows:

> (i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.
>
> * * *
>
> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.
>
> * * *
>
> (z) Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.
>
> * * *
>
> (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.
>
> (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Mich. Comp. Laws § 445.903(1). Although not part of the MCPA, Plaintiff also alleges that Defendants violated Mich. Comp. Laws § 445.356(1), which provides that "[a] person shall not knowingly make, publish, disseminate, circulate, or place before the public an advertisement which contains a statement or representation which is untrue, deceptive, or misleading." Plaintiff's claims fall, generally, within three categories: (1) unlawful misrepresentations; (2) unlawful omissions; and (3) grossly excessive pricing. The Court will examine each category in turn. When examining the alleged misrepresentations and omissions, the Court will consider these claims in conjunction with Plaintiff's common law fraud claim stated in Count II, as many of the elements require similar analysis. *See Mayhall v. A.H. Pond Co., Inc.*, 129 Mich. App. 178 (1983) (noting that the MCPA is to be construed with reference to the common law tort of fraud).

7

*1. Unlawful Misrepresentations*

In his complaint, Plaintiff identifies several purported misrepresentations, which include the following:

1. "MBS Direct relieves the burden, hidden costs and hassles of textbook fulfillment . . . . Best of all, there are no start-up costs or hidden fees for our services";

2. Question: "Can I save money by purchasing course materials directly from MBS Direct?" Answer: "Yes . . . used books, digital books (eBooks), Customer Loyalty program, and Guaranteed Buyback were all developed to save you the most money";

3. Question: "Can I sell books back to MBS Direct?" Answer: "we can offer top dollar for books"; and

4. "MBS Direct may provide services and other consideration to the educational institution, including, but not limited to . . . providing the educational institution a commission, or other financial remuneration, based upon sales made to the educational institutions' students."

Defendants argue that Plaintiff's common law and statutory claims should be dismissed to the extent they are based on purported misrepresentations because Plaintiff has failed to allege that (1) he read and relied on any of the alleged misrepresentations prior to purchasing textbooks, or (2) any of the alleged misrepresentations exerted a material influence on his purchasing decisions. While Plaintiff maintains that he need not allege reliance under the MCPA, the Court need not decide this issue because the Court is satisfied that Plaintiff has alleged reliance on Defendants' representations.

In paragraph 64 of his complaint, Plaintiff alleges that "Plaintiff and other class members reasonably relied on [Defendants]' misrepresentations and omissions by buying their books from [Defendants] rather than textbooks.com or other lower priced sources." Similarly, in paragraph 42 of the complaint, Plaintiff alleges that "he purchased textbooks from [Defendants] which were advertised and promoted by [Defendants] in a deceptive manner, which therefore misled the

8

consumer into paying an artificially inflated price for the goods provided." Thus, Plaintiff has identified several purported misrepresentations and alleges that he relied upon them when purchasing textbooks from Defendants. Further, Plaintiff alleges that the misrepresentations exerted a material influence on his purchasing decisions, stating that "he would not have purchased his textbooks from [Defendants] if he knew that he was being charged a higher price, and that his school was being paid the [commissions]." Accordingly, Defendants' motion to dismiss Plaintiff's claims on the basis that Plaintiff did not plead reliance is denied.

2. *Unlawful Omissions*

Plaintiff alleges that Defendants failed to make the following disclosures:

1. Defendants were, in fact, paying commissions to schools that entered into exclusive contracts with Defendants, which resulted in higher prices for consumers;

2. Identical textbooks were available for less money at Defendants' affiliate website, www.textbooks.com, which also offered free shipping; and

3. ISBNs for textbooks sold on Defendants' website.

According to Defendants, the fundamental issue presented by Plaintiff's complaint is whether, under Michigan law, product sellers have a duty to disclose (1) all information necessary for consumers to discover that the products they sell can be purchased elsewhere at potentially lower prices, (2) the reasons why a seller's prices are higher than those of competitors, and (3) information that will assist consumers in comparison shopping. Defendants argue that there is no duty under Michigan law to disclose such information. Plaintiff responds that he is not advocating the imposition of such an affirmative duty to disclose. Rather, Plaintiff argues that once Defendants chose to speak, they had a duty to speak fully and truthfully, and that Defendants' omissions were deceptive.

9

The parties agree that under Michigan law, disclosures are required where "partial disclosures may convey false impressions and mislead the plaintiff." *People v. Atkins*, 397 Mich. 163, 182 (1976). Plaintiff alleges that Defendants' statements that schools "may" be paid commissions, and that consumers can "save money" by purchasing course materials directly from Defendants' website amounted to half-truths that conveyed false impressions and misled Plaintiff because commissions *were* being paid and Plaintiff paid *more* money by purchasing textbooks directly from Defendants. While Defendants argue that the statements were not misleading, either by omission or otherwise, this is a question of fact, which may not be considered at this stage of the proceedings. Accepting Plaintiff's allegations as true, Plaintiff has stated a plausible claim of entitlement to relief with respect to the first two non-disclosures related to the payment of commissions and the availability of lower-priced textbooks.

With respect to Plaintiff's non-disclosure claim related to the ISBNs, however, Plaintiff has failed to identify any partial disclosures that would have conveyed a false impression or misled Plaintiff. While Plaintiff argues that this information should have been disclosed to allow consumers to comparison shop, Plaintiff presents no legal authority imposing such an affirmative duty to disclose on product sellers. Therefore, Plaintiff's claims based on Defendants' non-disclosure of ISBNs fails to state a claim upon which relief can be granted.

Accordingly, Defendants' motion to dismiss Counts I and II is denied with respect to (1) Plaintiff's misrepresentation claims, and (2) Plaintiff's non-disclosure claims related to the payment of commissions and the availability of lower-priced textbooks. Defendants' motion to dismiss Counts I and II is granted, however, with respect to Plaintiff's claim that Defendants failed to disclose ISBNs.

*3. Grossly Excessive Pricing*

As noted *supra*, Mich. Comp. Laws § 445.903(1)(z) makes it unlawful to "[c]harg[e] the consumer a price that is grossly in excess of the price at which similar property or services are sold." According to Defendants, this claim should be dismissed because Plaintiff provides no factual allegations regarding the price of textbooks available elsewhere or any other facts by which a comparison could be made to determine whether Defendants' prices were grossly excessive. Defendants also maintain that a 4-11% difference in price simply cannot be considered "grossly" excessive.

Plaintiff responds that he need not produce specific information with regard to the price of textbooks available from sources other than Defendants, arguing that he has raised a reasonable expectation that discovery will produce evidence in support of his allegations. The Court agrees that Plaintiff need not plead this claim with specificity, and while Defendants argue that their prices were not grossly excessive, this raises a question of fact that may not be considered at this stage of the proceedings. Accepting Plaintiff's factual allegations as true, Plaintiff has stated a plausible claim under Mich. Comp. Laws § 445.903(1)(z). Accordingly, Defendants' motion to dismiss Count I as it relates to Plaintiff's grossly excessive pricing claim is denied.

**B. Count III: Unjust Enrichment**

The Court finds that neither Plaintiff nor Defendants have adequately briefed the issue of whether Count III fails to state a claim upon which relief can be granted. Accordingly, if Defendants wish to submit additional briefing in support of their motion to dismiss Count III, they must do so within ten days of this order. If Plaintiff wishes to submit a response brief, it must do so within ten days thereafter. Defendants may then submit a reply brief within seven days of Plaintiff's response.

All briefs shall be limited to seven pages and comply with E.D. Mich. L.R. 5.1.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss [dkt 11] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

                                                    S/Lawrence P. Zatkoff
                                                    LAWRENCE P. ZATKOFF
                                                    UNITED STATES DISTRICT JUDGE

Dated: March 1, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 1, 2011.

                                                    S/Marie E. Verlinde
                                                    Case Manager
                                                    (810) 984-3290